UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

THE TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT,

                            Plaintiff,

                -v-

COLONY INSURANCE COMPANY,

                         Defendant.

------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:_____**
**DATE FILED: 01/27/2025**

23-cv-6168 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff The Travelers Indemnity Company of Connecticut ("Travelers") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, and Defendant Colony Insurance Company ("Colony") cross-moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. Nos. 25, 34.[1] Plaintiff's claims concern the alleged duty of Colony to defend or indemnify three entities in an underlying personal injury action titled *Quinntay Morris v. Structure Tone, LLC, et al.*, in the Supreme Court of the State of New York, County of New York, index number 156695/2019 (the "Underlying Action"). *Id.*; *see* Dkt. No. 34 at 2.[2]

For the following reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion for summary judgment is denied.

---

[1] As discussed below, Colony's nominal cross-motion for summary judgment is procedurally defective to an extent that makes it unclear whether Colony in fact intended to cross-move for summary judgment. The Court assumes that Colony did intend to seek such relief and denies the motion for the reasons stated below.

[2] Because this document has no page numbers, the Court refers to the ECF pagination.

**BACKGROUND**

I.    **The Policies**

Travelers issued a commercial general liability insurance policy with the policy number

630-6F991254-TCT-17 (the "Travelers Policy") to Kraman Iron Works, Inc. ("Kraman")

covering the policy period of April 14, 2017, to April 14, 2018.  Dkt. No. 29 ¶ 1; Dkt. No. 27-1–

27-6 ("Travelers Policy").  The Travelers Policy provides coverage for bodily injury during the

policy period, subject to certain conditions and exclusions.  Dkt. No. 29 ¶ 2.  One such condition

is that the Travelers Policy is excess over "[a]ny other primary insurance available to you

covering liability for damages arising out of the premises or operations for which you have been

added as an additional insured by attachment of an endorsement."  Travelers Policy at 104.

Colony issued a commercial general liability insurance policy with the policy number

103 GL 0018902-04 (the "Colony Policy") to Steel Riser Corp. ("Steel Riser") covering the

policy period of July 12, 2017, to July 12, 2018.  Dkt. No. 29 ¶ 4; Dkt. No. 28-1.  The Colony

Policy provided coverage for bodily injury during the policy period, subject conditions and

exclusions.  Dkt. No. 28-1.

The Colony Policy includes an endorsement titled "**ADDITIONAL INSURED –**

**OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR**

**ORGANIZATION**."  *Id.* at 32.[3]  This endorsement states that "all persons or organizations as

required by written contract with the Named Insured" shall be added as additional insureds with

respect to operations designated by written contract.  *Id.*  The endorsement further states:

> Section II – Who Is An Insured is amended to include as an additional insured the
> person(s) or organization(s) shown in the Schedule, but only with respect to liability
> for "bodily Injury", "property damage" or "personal and advertising Injury" caused,
> in whole or in part, by:

---

[3] ECF pagination.

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

*Id.*

The Colony Policy also includes an endorsement titled "**ADDITIONAL INSURED –**

**OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**." *Id.* at 34.

This endorsement similarly states that "all persons or organizations as required by written

contract with the Named Insured" shall be added as additional insureds with respect to operations

designated by written contract. *Id.* It further states:

> Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."[4]

*Id.*

The Colony Policy additionally includes an endorsement titled "**PRIMARY AND NON-**

**CONTRIBUTORY– OTHER INSURANCE CONDITION – DESIGNATED ENTITY**." *Id.*

at 60.  This endorsement applies to a Schedule consisting of "[a]ll persons or organizations as

required by written contract with the Named Insured." *Id.* It states:

> This insurance is primary to and will not seek contribution from any other insurance available to the person(s) or organization(s) designated in the SCHEDULE above provided:
>
> 1. The person(s) or organization(s) designated in the SCHEDULE above is a Named Insured under such other insurance; and

---

[4] "Products-completed operations hazard" is a defined term which includes only injuries arising from products that have left the insured's physical possession and work which has been completed by the insured. *Id.* at 23.

3

2. You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the person(s) or organization(s) designated in the SCHEDULE above.

*Id.*

## II.  The Construction Project

Structure Tone, Inc. ("Structure Tone") was the manager of a construction project at 6163 Crosby Street (the "Project").  Dkt. No. 29 ¶ 8.  Structure Tone hired Kraman as a subcontractor to work on the Project.  *Id.* ¶ 9.  The work to be done by Kraman involved structural steel work for a new extension on the roof.  Dkt. No. 28-3; Dkt. No. 28-12 at 10:18–25.

Kraman subcontracted with Steel Riser for Steel Riser to do miscellaneous steel installation at the Project site.  Dkt. No. 28-10 at 11:19, 16:8–11; Dkt. No. 29 ¶ 10.  Steel Riser's work on the Project included installing handrails.  Dkt. No. 28-10 at 20:20; Dkt. No. 28-11 at 13:21–14:7.  Steel Riser installed the handrails based on drawings which specified the manner of installation.  Dkt. No. 28-10 at 28:4–25; Dkt. No. 28-12 at 11:18–22.  Kraman provided the materials to be installed.  Dkt. No. 28-11 at 34:22–35:11.

Kraman's contract with Steel Riser required Steel Riser to maintain commercial general liability insurance with certain specifications and to name Kraman as an additional insured.  *Id.* ¶ 11.  It stated that "[t]his shall be indicated on the certificate of insurance as follows:  In the description section; "__**Kraman Iron Works**_____ **& Owner are *named additional insured's on a primary and non-contributory basis.***""  *Id.*  The contract further stated that:

> to the fullest extent permitted by law, subcontractor shall indemnify, hold harmless and defend Contractor, Owner and agents … of any of them from and against all claims, damages, losses or expenses . . . arising out of or resulting from the work of subcontractor provided that such claim, damage, loss, or expense . . . is attributable to bodily injury [or property damage] and . . . is caused in whole or in part by any act or omission of the subcontractor . . . .

Dkt. No. 28-4.

### III.    The Underlying Action

On July 9, 2019, Quinntay Morris filed the Underlying Action in the Supreme Court of

the State of New York, New York County, against Structure Tone and 6163 Crosby Street, Inc.

("6163 Crosby").  *Id.* ¶ 12; Dkt. No. 28-6.  Morris's complaint alleges that he was an employee

of Metropolitan Construction Systems, Inc. ("Metropolitan"), a subcontractor hired by Structure

Tone to work on the Project.  Dkt. No. 28-6 ¶¶ 14–15.  It further alleges that Morris was

performing construction activities at the Project site on March 15, 2018, when he fell down a

flight of stairs and suffered injury.  *Id.* ¶¶ 17–19, 26, 30–32.  Morris brought claims for

negligence and violation of Sections 200, 240, and 241(6) of the New York Labor Law.  *Id.*

On February 26, 2020, Structure Tone filed a third-party complaint against Kraman and

Metropolitan in the Underlying Action.  Dkt. No. 28-7.  The third-party complaint alleges that

Morris's injury arose out of the work Kraman and/or Metropolitan were doing on the Project.  *Id.*

¶¶ 10–15.  It brought claims against Kraman and Metropolitan for contractual defense and

indemnification, negligence, attorney's fees, and failure to procure insurance.  *Id.*

On February 29, 2020, Morris filed a bill of particulars specifying that his injury occurred

because he "was caused to fall down a stairway due to handrail becoming dislodged from the

stairway wall."  Dkt. No. 28-9 ¶ 22.

On April 2, 2021, Kraman filed a second third-party complaint against Steel Riser,

bringing claims for defense and indemnity, contribution, and breach of contract by failure to

procure insurance.  Dkt. No. 28-8.

On April 19, 2023, the court in the Underlying Action denied Steel Riser's motion for

summary judgment, holding that issues of material fact remained regarding whether Steel Riser

was responsible for Morris's injury due to negligent installation of the relevant handrail.  Dkt.

No. 28-13 at 3.  The court also found that material issues of fact precluded summary judgment

for Kraman against Steel Riser, as Kraman failed to show that it was free from negligence or that it provided appropriate materials to Steel Riser. *Id.* at 9. However, the court granted summary judgment for Kraman on Kraman's claim that Steel Riser breached the terms of their contract by failing to properly name Kraman as an additional insured. *Id.* The court also granted summary judgment for Morris against Structure Tone and 6163 Crosby on claims under N.Y. Labor Law §§ 240(1) and 241(6), but dismissed Morris's claims against the same defendants under N.Y. Labor Law § 200. *Id.* at 10.

IV.    **The Tender and Disclaimer**

By letter dated March 30, 2021, Travelers tendered Morris's claim against Kraman to Steel Riser and Colony. Dkt. No. 29 ¶ 40; Dkt. No. 28-14. The tender letter stated that Steel Riser contracted with Kraman to install handrails and stairs, and that Morris was injured when a handrail broke and he fell to the landing below. Dkt. No. 28-14. A Notice of Occurrence/Claim form submitted to Colony and dated April 8, 2021, states that Morris "allegedly was injured when a handrail that insured installed broke and he fell to the landing below. Insured was a sub to Kraman Iron Works." Dkt. No. 28-2.

By letter dated April 22, 2021, Colony responded to Travelers, acknowledging receipt of the tender and stating that it was investigating the matter under a full reservation of rights. Dkt. No. 29 ¶ 41; Dkt. No. 28-15. Colony further stated that "Kraman is an additional insured," but only with respect to bodily injury caused in whole or in part by "your work," as defined in the Colony Policy. Dkt. No. 28-15 at 3. It reserved rights under this and other endorsements, stating that its investigation was "in its initial stages." *Id.* at 7.

By letter dated December 14, 2023, while this litigation was pending, Travelers sent a letter to Colony requesting defense and indemnification and additional insured coverage on

behalf of 6163 Crosby and Structure Tone.  Dkt. No. 27-7.  Colony has not defended Kraman, Structure Tone, or 6163 Crosby in the Underlying Action.  Dkt. No. 29 ¶ 43.

## PROCEDURAL HISTORY

Travelers filed the complaint in this case on July 18, 2023.  Dkt. No. 1.  The complaint sought a declaration that Kraman was an additional insured under the Colony Policy, that Colony had a duty to defend Kraman in the Underlying Action, and that the Colony coverage was primary to any coverage provided by Travelers to Kraman.  *Id.*  It also sought damages for the amounts incurred by Travelers in defending the Underlying Action.  *Id.*  Colony filed an answer on November 30, 2023.  Dkt. No. 14.  A case management plan was entered and the case proceeded to discovery.  Dkt. No. 16.

Travelers then filed an amended complaint on December 20, 2023.  Dkt. No. 17.  The amended complaint adds allegations that Travelers is currently defending 6163 Crosby and Structure Tone in the Underlying Action, and that Colony is required to defend and indemnify 6163 Crosby and Structure Tone.  *Id.*

At a conference on April 15, 2024, Travelers made an oral motion for sanctions against Colony for failure to comply with court-ordered discovery deadlines.  Dkt. No. 21; *see* April 15, 2024 Minute Entry.  The Court ordered Colony to respond by April 22, 2024.  *See* April 15, 2024 Minute Entry.  Colony failed to do so, and Travelers renewed its motion by letter of April 25, 2024.  Dkt. No. 21.  On April 26, 2024, the Court granted the motion for sanctions and prohibited Colony from offering or relying on any documents or evidence that had not yet been produced.  Dkt. No. 22.

On May 31, 2024, Travelers moved for summary judgment.  Dkt. No. 25.  Travelers supports its motion with a memorandum of law, a declaration of a Travelers employee with

seven exhibits, a declaration of counsel with seventeen exhibits, and a Local Rule 56.1 statement. Dkt. Nos. 26–29.

On June 5, 2024, Colony filed a memorandum of law in opposition to Travelers' motion for summary judgment and in support of its own cross-motion for summary judgment. Dkt. No. 34.[5] Colony also submitted a response to Travelers' Local Rule 56.1 statement and its own statement of additional material facts. Dkt. No. 35. Travelers submitted a reply memorandum of law in support of its own motion for summary judgment and in opposition to Colony's motion, Dkt. No. 38, and a response to Colony's statement of additional material facts, Dkt. No. 39.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

---

[5] Although Colony styled its memorandum as supporting its own motion for summary judgment, it did not file a notice of such motion as required by Local Civil Rule 7.1.

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). "Mere conjecture or surmise by the nonmovant in support of his or her case is inadequate." *Am. Home Assurance Co. v. Jamaica*, 418 F. Supp. 2d 537, 546 (S.D.N.Y. 2006).

## DISCUSSION

Plaintiff argues that Kraman, 6163 Crosby, and Structure Tone are additional insureds under the Colony Policy and Kraman's contract with Steel Riser, and therefore that Colony has a duty to defend those three entities in the Underlying Action. Dkt. No. 26 at 15–17. Colony argues that it is not required to defend Kraman because "[o]nly allegations of mere speculation remain that Steel Riser did something wrong," Dkt. No. 34 at 8, and that Travelers' claim is barred by res judicata because the court in the Underlying Action granted summary judgment to Kraman based on Steel Riser's failure to procure insurance, *id.* at 9. Colony also argues that Travelers has "no standing" to bring claims for the defense or 6163 Crosby and Structure Tone,

and that these entities were not required by contract to be added as additional insureds.  Dkt.

No. 34 at 7, 9–10.  Travelers replies that the duty to defend applies so long as there is a

reasonable possibility the claim is covered by the policy, and that Colony's arguments regarding

6163 Crosby and Structure Tone are factually inaccurate.  Dkt. No. 38.

I.    **Kraman**

Colony has a duty to defend Kraman in the underlying action.

In New York, "the duty of an insurer to defend its insured is 'exceedingly broad' and far

more expansive than the duty to indemnify its insured."  *High Point Design, LLC v. LM Ins.*

*Corp.*, 911 F.3d 89, 94–95 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609

N.E.2d 506, 509 (N.Y. 1993)).  "[A]n insurer may be required to defend under the contract even

though it may not be required to pay once the litigation has run its course."  *Euchner-USA, Inc. v.*

*Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014).  "An insurer may refuse to defend

'only if it could be concluded as a matter of law that there is no possible factual or legal basis on

which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any

provision of the insurance policy.'"  *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71,

82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of*

*Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)).

To determine whether there is factual basis for an insurer's duty to defend, New York

Courts look both to the complaint itself and to any additional information possessed by the

insurer.  *See Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323–24

(S.D.N.Y. 2020).  First, "[a]n insurer's duty to defend 'arises whenever the allegations within the

four corners of the underlying complaint potentially give rise to a covered claim.'"  *Worth Const.*

*Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Frontier Insulation*

*Contractors v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)).  "Those allegations

must be 'liberally construed' and '[a]ny doubt as to whether the allegations state a claim within

the coverage of the policy must be resolved in favor of the insured and against the carrier.'"

*Charter Oak Fire*, 462 F. Supp. 3d at 324 (quoting *Euchner-USA*, 754 F.3d at 141).  Second,

even if the complaint itself does not reveal the possibility of coverage, "the insurer is required 'to

provide a defense when it has actual knowledge of facts establishing a reasonable possibility of

coverage.'"  *Id.* (quoting *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1991)).

Kraman was an insured under the Colony Policy.  The Colony Policy states that "all

persons or organizations as required by written contract with the Named Insured" are added as

additional insureds.  Dkt. No. 28-1 at 32.  The Named Insured, Steel Riser, signed a written

contract with Kraman agreeing to act as subcontractor to Kraman and stating that "Contractor

[Kraman] shall be named as additional insured on the Sub-Contractor's insurance policies for all

work performed by the Sub-Contractor."  Dkt. No. 28-3.  Therefore, Kraman was an additional

insured on the Colony Policy.  The additional insured is covered under the Policy for "'bodily

injury' caused, in whole or in part," by Steel Riser's "acts or omissions . . . in the performance of

[Steel Riser's] ongoing operations for the additional insured(s)."  Dkt. No. 28-1 at 32.

The allegations in the Underlying Action and facts known to Colony at the time coverage

was sought clearly establish that Colony was required to defend Kraman.  Morris's original

complaint does not mention Steel Riser.  However, the tender letter and Notice of

Occurrence/Claim form sent to Steel Riser state that Morris's injury occurred because a handrail

installed by Steel Riser broke, causing him to fall.  Dkt. No. 28-2; Dkt. No. 28-14.  And the

Second Third-Party Complaint, dated April 2, 2021, clearly alleges that Plaintiff's "alleged

accident arose out of the services and/or work STEEL RISERS CORP., was retained to perform

pursuant to the written agreement(s)."  Dkt. No. 28-8 ¶ 14.  Thus, by the time Colony responded

to Travelers' tender on April 22, 2021, there were allegations in the Underlying Action that

"potentially give rise to a covered claim," *Worth Const. Co*., 888 N.E.2d at 1045 (citation

omitted), and information known by Colony "establishing a reasonable possibility of coverage."

*Fitzpatrick*, 575 N.E.2d at 93.  A bodily injury allegedly caused by a defective handrail installed

by Steel Riser for Kraman is squarely within the zone of claims for which Kraman was covered

as an additional insured.

Colony's main argument to the contrary is that it has no duty to defend because at this

time it is not certain that Steel Riser caused Plaintiff's injury.  Dkt. No. 8.  This is incorrect.  As

myriad cases state, "[i]t is a well-established legal principle that the duty of an insurer to defend

is broader than its duty to pay."  *Ruder & Finn Inc. v. Seaboard Sur. Co*., 422 N.E.2d 518, 521

(N.Y. 1981); *see, e.g.*, *Fitzpatrick*, 575 N.E.2d at 92; *High Point Design*, 911 F.3d at 94–95;

*Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006).  Where, as here, the

Policy states that "[w]e will have the right and duty to defend the insured against any 'suit'

seeking" damages to which the insurance applies, that is not a commitment merely to indemnify

the insured if a claim is found to have merit.  Dkt. No. 28-1 at 9.  It is also a commitment to

defend the insured against those "seeking" damages which the insurer would have to pay.  *See*

*Auto. Ins. Co.*, 850 N.Y.S.2d. at 1155.  This principle does not change simply because the

insured is an additional insured rather than a named insured.  "Additional insured coverage is not

contingent upon a liability finding and . . . the obligation of an insurer to provide a defense to an

additional named insured under the policy exists to the same extent as it does to a named

insured."  *BP Air Conditioning Corp. v. One Beacon Ins. Grp*., 871 N.E.2d 1128 (N.Y. 2007).

A contrary rule would defeat one of the major purposes of purchasing insurance which

includes a duty to defend.  Such insurance is not only liability insurance, but also "litigation

12

insurance." *Int'l Paper Co. v. Cont'l Cas. Co.*, 320 N.E.2d 619, 621 (N.Y. 1974). "The assured pays the premium not only for protection against damages recovered by reason of the negligence of the employees of assured, but also to escape harassment from groundless claims." *Summer & Co. v. Phoenix Indem. Co.*, 32 N.Y.S.2d 2, 5 (N.Y. Sup. Ct. 1942), *aff'd sub nom. Summer & Co. v. Phoenix Indem. Co.*, 38 N.Y.S.2d 800 (4th Dep't 1942). The defense insurance purchased by the insured would be largely useless for the insured if it kicked in only after litigation had been completed and the insured had been forced to pay the costs. The contrary rule also would also largely defeat a benefit of the defense provision to the insurer, which is to ensure effective litigation and settlement of claims. If the insured is financially unable to defend against a claim and defaults, the insurer will be responsible for significant damages. Insurer control over the defense allows it to avoid paying out groundless claims and minimize damages from legitimate ones.

Colony's argument is particularly inapt here because Steel Riser's responsibility for Morris's injury is not merely "alleged," or "possible" (which could still be enough to require it to defend the allegations given the breadth of the duty to defend), but is squarely in dispute in the Underlying Litigation. Steel Riser sought a motion for summary judgment on its liability for Morris' injury, but that motion was denied. Dkt. No. 28-13 at 3. After discovery and depositions, Steel Riser was unable to eliminate issues of material fact regarding whether its negligence in installing the handrail led to Morris's fall. *Id.* It is indisputable Colony should be defending Kraman in that action.

Travelers is also not collaterally estopped from seeking a defense from Colony by the court's ruling in the Underlying Action that Steel Riser "breached the express terms of the contract by failing to properly name Kraman as an additional insured." Dkt. No. 28-13 at 9.

Collateral estoppel prevents "a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 737 (N.Y. 2021) (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647, 651 (N.Y. 1999)).  The issue must be "identical to an issue which was raised, necessarily decided and material in the first action," and the party being estopped must have "had a full and fair opportunity to litigate the issue in the earlier action." *Id.* (quoting *Parker*, 712 N.E.2d at 651).

Here, the underlying breach of contract dispute was between Kraman and Steel Riser. Travelers was not a party, and there was no determination against it.  Therefore, there is no collateral estoppel.  Although Travelers was presumably defending Kraman (under protest) as its insurer, "the insurer necessarily must rely on independent counsel to conduct the litigation," "and the paramount interest independent counsel represents is that of the insured, not the insurer." *Feliberty v. Damon*, 527 N.E.2d 261, 265 (N.Y. 1988); *see Pavia v. State Farm Mut. Auto. Ins. Co.*, 626 N.E.2d 24, 27 (N.Y. 1993) ("[I]nsurers typically exercise complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured's best interests.").  Travelers cannot be bound by Kraman's litigation decisions simply because Travelers funded the defense, when those decisions were required to be faithful to Kraman's interests even if they were adverse to Travelers'.  If Travelers had a "full and fair opportunity" to litigate the issue in the prior action according to its own interests, it would presumably have introduced the same evidence it has

introduced here, which firmly establishes that Kraman was an additional insured on the Colony

Policy.[6]

## II.    6163 Crosby and Structure Tone

Plaintiff's argument is more difficult with regard to 6163 Crosby and Structure Tone.

Plaintiff argues that like Kraman, 6163 Crosby and Structure Tone were additional insureds

because Steel Riser was required by contract to add them as such.  Dkt. No. 26 at 16.

Specifically, Plaintiff states that the subcontract between Kraman and Steel Riser "requires Steel

Riser to assume all obligations of Kraman under the . . . Master Subcontract" between Kraman

and Structure Tone, and "[t]he Master Subcontract requires Steel Riser to defend and indemnify

Kraman, 6163 Crosby and Structure Tone from and against any and all claims arising out of

. . . Steel Riser's work."  *Id.*; *see* Dkt. No. 38 at 5–6.  Defendant argues that "there is no written

contract with Steel Riser that provides Steel Riser was to include either 6163 or Structure Tone

as additional insured."  Dkt. No. 34 at 9–10.[7]

---

[6] In any case, the summary judgment opinion in the Underlying Action is ambiguous as to whether the court actually decided that Kraman was not an additional insured on this specific Policy.  The order merely states that Steel Riser "breached the express terms of the contract by failing to properly name Kraman as an additional insured."  Dkt. No. 28-13 at 9.  Failing to "properly name Kraman as additional insured" could constitute, for example, failing to explicitly name Kraman as an insured on all insurance policies using the exact terminology required by the contract.  Dkt. No. 28-3.  The wording of the opinion is not necessarily inconsistent with Kraman being an additional insured on the Colony Policy, and Defendant does not provide any additional evidence that would clarify what issues were actually litigated and decided.  *See Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985) ("The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation.").
[7] Defendant also argues that Travelers has "no standing" to seek relief "on behalf of" 6163 Crosby or Structure Tone because "[a]t no point has Travelers amended its complaint to notify Colony of its intent to seek damages resulting from either a defense or indemnity granted by Travelers to 6163 Crosby or Structure Tone."  Dkt. No. 34 at 7.  However, Travelers' amended complaint, Dkt. No. 17, specifically amends the original complaint to add allegations related to the defense and indemnity of 6163 Crosby and Structure Tone.

The additional insured status of all relevant parties here turns on a very brief, one-page contract between Kraman and Steel Riser, titled "Indemnity Agreement and Agreement to Maintain Certain Insurance." Dkt. No. 28-4. The contract lists certain required types and amounts of insurance, requires that Kraman shall be named additional insured on such insurance, and states that:

> 2. Contractor shall be named additional insured on the Sub-Contractor's insurance policies for all work performed by the Sub-Contractor.
>      This shall be indicated on the certificate of insurance as follows:
> In the description section; "__**Kraman Iron Works**_____**& Owner are** _named additional insured's on a primary and non-contributory basis_".

> 3. Furthermore, To the fullest extent permitted by law, subcontractor shall indemnify, hold harmless and defend Contractor, Owner, and agents and employees of any of them from and against all claims, damages, losses and expenses including but not limited to attorney's fees arising out of or resulting from the work of subcontractor provided any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property, including loss of use resulting there from, and (b) is caused in whole or in part by any act or omission of the subcontractor of anyone directly or indirectly employed by it or anyone for whose acts it may be liable pursuant to the performance of the work . . . the indemnification obligation under this paragraph shall not be limited by any limitations on amount or type of damages, compensation or benefits payable by or for subcontractors under workers' compensation and benefit act or other employee benefit acts.

*Id.*

This contract is, as its title indicates, both an agreement to maintain insurance and an indemnity agreement. The agreement to maintain insurance portion is primarily an agreement that the Contractor, Kraman, shall be named additional insured on the insurance policies of the Sub-Contractor, Steel Riser. The agreement to name Kraman as an additional insured is noted twice in the very brief contract. By contrast, Structure Tone is not mentioned by name or position, and there is no indication Steel Riser is obligated to add it as an additional insured. Therefore, summary judgment cannot be granted for Plaintiff on the issue whether Colony has a duty to defend Structure Tone.

16

6163 Crosby is also not mentioned by name.   The only possible reference to 6163 Crosby is the recommended language to be placed on the certificate of insurance, which is that "___Kraman Iron Works_____ & Owner are *named additional insured's on a primary and non-contributory basis.*"  Dkt. No. 28-4.  However, this language on its face does not purport to be an agreement by Steel Riser to name the Owner of the project as an additional insured.  On the basis of this language alone, 6163 Crosby could not prevail in a suit against Steel Riser for failure to obtain insurance naming it as an additional insured.  Rather, it is stated to be the language that Steel Riser is to have included on the certificate of insurance to "indicate[]" that the Contractor, Kraman, is named as an additional insured.  *Id.*  Although the provision can be read to require that the certificate of insurance documenting the fact that Steel Riser has satisfied its obligation to obtain additional insured coverage for Kraman also reference the Owner, it is the policy itself rather than a certificate that governs whether a person is an additional insured.  *See Chipotle Mexican Grill, Inc. v. RLI Ins. Co*., 158 N.Y.S.3d 201, 205 (2d Dep't 2021) ("The certificate of insurance proffered in opposition, listing the plaintiffs as additional insureds under the subject policy, was insufficient to alter the language of the policy itself.").  Therefore, it is, at best, ambiguous whether the parties agreed that the Owner would be added as an additional insured.  Indeed, the word "Owner" is not a defined term in the contract, and the word "Owner" placed on a certificate of insurance would not give any indication that 6163 Crosby, as opposed to any other owner of a project, was an insured.[8]

---

[8] Relatedly, it is not clear that Plaintiff has proven by the evidence submitted on this motion that 6163 Crosby was the Owner of the Project site.  Plaintiff asserts in its briefing that "6163 Crosby is the property owner," Dkt. No. 26 at 1, and Defendant does not appear to contest this.  However, Plaintiff's Local Rule 56.1 statement does not explain 6163 Crosby's role in this Project nor cite to any admissible evidence that would prove it.  *See* Dkt. No. 29.

Plaintiff has not submitted any other evidence that 6163 Crosby was an additional insured

under the Colony Policy, nor, assuming this contract is ambiguous, has Plaintiff pointed to any

extrinsic evidence that would resolve this ambiguity by showing that the parties agreed to add

6163 Crosby as an additional insured.  *See Tang Cap. Partners, LP v. BRC Inc.*, 2024 WL

4716315, at *30 (S.D.N.Y. Nov. 8, 2024) ("Summary judgment is appropriate 'if the ambiguities

may be resolved through extrinsic evidence that is itself capable of only one interpretation, or

where there is no extrinsic evidence that would support a resolution of these ambiguities in favor

of the nonmoving party's case.'" (quoting *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 526 F.3d

63, 68 (2d Cir. 2008))).  Therefore, summary judgment also cannot be granted for Plaintiff on the

issue whether Colony has a duty to defend 6163 Crosby.

Plaintiff attempts to rely on section 3 of the contract between Kraman and Structure

Tone, which states that "subcontractor shall indemnify, hold harmless and defend Contractor,

Owner, and agents and employees of any of them."  Dkt. No. 38 at 6.  However, this is not an

additional insured provision.  It is an indemnification provision.  *See Lexington Ins. Co. v. Kiska

Dev. Grp. LLC*, 122 N.Y.S.3d 590, 592 (1st Dep't 2020) ("[E]ntitlement to additional insured

status and contractual indemnification are distinct."); *WDF Inc. v. Harleysville Ins. Co. of N.Y.*,

146 N.Y.S.3d 128, 129 (1st Dep't 2021) ("[The insured's] contractual indemnification obligation

was separate and distinct from [the insurer's] duty to defend and indemnify under the additional

insured endorsement of its policy.").  A contractual indemnification provision provides a cause

of action directly against the second party to the contract, whereas additional insured status

supports recovery against the insurer under the insurance policy.  *See ACC Constr. Corp. v.

Merchs. Mut. Ins. Co.,* 161 N.Y.S.3d 10, 11–12 (1st Dep't 2021) (distinguishing an insurer's

duty to defend and indemnify from the duties of a contractual indemnitee).  Steel Riser's

agreement to contractually indemnify "Contractor, Owner, and agents and employees of any of them" may support a claim by Structure Tone and 6163 Crosby against Steel Riser, but it does not support any claim that those two would have against Defendant for coverage as an insured.[9] Plaintiff has not established its entitlement to summary judgment on the issue of Colony's duty to defend or indemnify 6163 Crosby or Structure Tone.

To the extent Colony seeks summary judgment as to its obligations toward 6163 Crosby or Structure Tone, that motion is denied. Although Colony's memorandum of law at Dkt. No. 34 asks the court to grant "Colony's cross-motion for summary judgment," Colony has followed virtually none of the rules required to make such a motion. Local Civil Rule 7.1 states:

> [A]ll motions shall include the following motion papers:
>
> (1) A notice of motion . . . which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
>
> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and
>
> (2) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.

Local Civil Rule 7.1(a). Colony did not submit a notice of motion or any supporting affidavits or exhibits. Colony also did not submit a Local Rule 56.1 statement of undisputed material facts. Such a statement is required to accompany a motion for summary judgment, and "[f]ailure to submit such a statement may constitute grounds for denial of the motion." Local Civil

---

[9] Nor does the indemnification provision somehow incorporate the contract between Structure Tone and Kraman, as Plaintiff suggests, such that Steel Riser would be required to purchase the same insurance that Kraman was required to purchase under that contract. Dkt. No. 26 at 16. The indemnification provision merely states that Steel Riser will indemnify Kraman for certain losses arising out of Steel Riser's work. Dkt. No. 28-4. It does not state that Kraman's contractual obligations are assigned to Steel Riser.

Rule 56.1(a).  Colony only submitted a response to Plaintiff's Local Rule 56.1 statement, as required when opposing a motion for summary judgment under Local Civil Rule 56.1(b).  Dkt. No. 35; Local Civil Rule 56.1(b).[10]  Finally, Colony did not submit a reply to Plaintiff's opposition to its motion, as would be expected if Colony in fact sought to make its own motion for summary judgment.  Assuming Colony does seek summary judgment in its favor, as stated in its opposition papers, such motion is denied as procedurally defective.

## CONCLUSION

Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff's motion is granted to the extent that it seeks an order that Colony owes a duty to defend Kraman in the Underlying Action, that Colony's coverage is primary and Travelers' coverage is excess, and that Colony is liable for sums Travelers has incurred in defending Kraman in the Underlying Action.  Plaintiff's motion is denied to the extent that it seeks an order that Colony owes a duty to defend 6163 Crosby and Structure Tone and that Colony is liable for sums Travelers has incurred in defending 6163 Crosby and Structure Tone in the Underlying Action.

Defendant's motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 25 and 34.


SO ORDERED.

Dated: January 27, 2025
      New York, New York                              _____
                                                          LEWIS J. LIMAN
                                                      United States District Judge

---

[10] This response was also untimely, as it was filed one day after the deadline ordered by the Court.  *See* Dkt. No. 35.  Because the response did not dispute any facts material to this motion, *see* Dkt. No. 35, any question whether it may be properly considered is irrelevant.